IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE KRAVETZ, JONATHAN KRAVETZ, CARRIE KRAVETZ, and STEVEN BROOKS, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 16-cv-09194 |
| v. | ) ) | **COMPLAINT** |
| BRIDGE TO LIFE, LTD., a Wyoming corporation, STEVEN SCHWEIGHARDT, THOMAS KELLER, JEROME LISS, JOEL SEGAL, RICHARD BIRCH, MICHAEL HOLICK, AND SHAWN RICE, in their capacities as Directors of BRIDGE TO LIFE, LTD., | ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiffs, Lawrence Kravetz, Jonathan Kravetz, Carrie Kravetz, and Steven Brooks (collectively, the "Plaintiffs"), by and through their attorneys, Litchfield Cavo LLP, allege for their Complaint against Defendants Bridge to Life, Ltd., a Wyoming corporation ("BTL" or the "Company") and Steven Schweighardt, Thomas Keller, Jerome Liss, Joel Segal, Richard Birch, Michael Holick, and Shawn Rice (collectively the "BTL Directors,") as follows:

### **INTRODUCTION**

1.  Lawrence Kravetz is a founding shareholder of BTL, a corporation originally formed in 2005 under the laws of the State of Delaware and re-domesticated in Wyoming in February 2014. Over a period of approximately five years, from July 15, 2005 until June 11, 2010, the Company issued to Lawrence Kravetz 1,200,000 shares of common stock.

2.  During that time, Lawrence Kravetz continuously sought out investors and capital for BTL and encouraged his family and friends to invest in the Company. Among other things,

he obtained a $50,000 loan to the Company from his brother, Norman Kravetz, which allowed BTL to make one of its initial investments. Norman Kravetz subsequently purchased a substantial block of BTL common stock for himself and Plaintiffs Jonathan Kravetz and Carrie Kravetz and remains a large investor in BTL.

3. Plaintiffs Jonathan and Carrie Kravetz are Lawrence Kravetz's children. In 2006, Norman Kravetz purchased 20,000 shares of BTL common stock for Jonathan Kravetz and 20,000 shares of BTL common stock for Carrie Kravetz.

4. Plaintiff Steven Brooks is a shareholder in BTL who owns 25,000 common shares of stock in the Company.

5. On February 19, 2014, BTL re-domesticated in the State of Wyoming. In connection therewith, the Company purported to undertake to replace all of its outstanding original stock certificates in the Delaware entity with new stock certificates in the Wyoming entity. In accordance with the instructions received from the Company for obtaining new certificates, Lawrence Kravetz, Jonathan Kravetz, Carrie Kravetz and Steven Brooks retired their BTL stock by returning their respective stock certificates to the Company.

6. The Company and its Directors refused to re-issue stock to certain BTL stockholders who had retired their Delaware stock certificates per the Company's instructions, including Plaintiffs. Defendants falsely claimed that Lawrence Kravetz was not entitled to the re-issuance of his 1,200,000 shares of common stock in the Company and also refused to re-issue the shares of Jonathan Kravetz and Carrie Kravetz. Likewise, Defendants refused to re-issue to Steven Brooks his 25,000 shares of common stock in the Company.

7. Plaintiffs bring this action against BTL and the Directors for (i) breach of contract, (ii) promissory estoppel, (iii) unjust enrichment, (iv) breach of fiduciary duty, (v) breach of the implied covenant of good faith and fair dealing, (vi) conversion, and (vii) for a

declaratory judgment that the Company must issue to Plaintiffs stock in the Company in the same undiluted amounts that they held prior to the Company's re-domestication.

## PARTIES

8. Plaintiff Lawrence Kravetz is a citizen of California and a founder and shareholder of BTL.

9. Plaintiff Jonathan Kravetz is a citizen of Washington and a shareholder of BTL.

10. Plaintiff Carrie Kravetz is a citizen of California and a shareholder of BTL.

11. Plaintiff Steven Brooks is a citizen of Florida and a shareholder of BTL.

12. BTL is a Wyoming corporation re-domesticated under the laws of Wyoming pursuant to W.Y. Stat. § 17-16-1801 of the Wyoming Business Corporation Act. BTL's principal place of business is located in Illinois. BTL is therefore a citizen of Wyoming and Illinois.

13. Defendant Steven Schweighardt is a citizen of Illinois and the Chairman of the Board of Directors and Chief Executive Officer ("CEO") of BTL.

14. Defendant Thomas Keller is a citizen of Illinois and a director and Chief Operating Officer of BTL.

15. Defendant Michael Holick is a citizen of Massachusetts and a director, President, and Chief Scientific Officer of BTL.

16. Defendant Jerome Liss is a citizen of Wisconsin and a director of BTL.

17. Defendant Joel Segal is a citizen of New York and a director of BTL.

18. Defendant Richard Birch is a citizen of Virginia and a director of BTL.

19. Defendant Shawn Rice is a citizen of Wisconsin and a director of BTL.

**JURISDICTION**

20. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states and the matter in controversy exceeds the sum or value of $75,000. Plaintiffs' stock has a value of no less than $4.00 per share.

21. Venue is proper in this district pursuant to 28 USC §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**FACTUAL BACKGROUND**

*Lawrence Kravetz Raises Funds for BTL and Participates in Corporate Development*

22. BTL is a medical supply company that develops, manufactures, and sells organ transplant solutions in the United States.

23. BTL was founded in 2005 and incorporated in Delaware on June 1, 2005.

24. Lawrence Kravetz is one of BTL's founders. For being a founder and in recognition of the business development and fundraising services Lawrence Kravetz provided to the Company, BTL issued to Lawrence Kravetz 1,200,000 shares of common stock over approximately five years.

*BTL Re-domesticates in Wyoming and Plaintiffs Relinquish Stock Certificates in the Delaware Corporation With the Expectation that They be Issued Shares in the Wyoming Entity*

25. The Company retained Shawn G. Rice, of the firm Rice Business Law, LLC ("RBL"), to assist with the Company's re-domestication to Wyoming. Mr. Rice is also currently a Director of BTL.

26. On or about February 19, 2014, BTL was re-domesticated under W.Y. Stat. § 17-16-1801 of the Wyoming Business Corporation Act. *See* Foreign Profit Corporation Articles of Domestication, attached hereto as **Exhibit A**.

27. By letter dated February 27, 2014, Mr. Rice requested that BTL's shareholders, including all Plaintiffs, retire their existing stock certificates so they could be reissued new stock certificates in the Wyoming entity. The letter states, in relevant part:

> As you are aware, the [Company] was recently re-domesticated to the State of Wyoming. As a result, all of the original stock certificates issued under Delaware corporate law are to be replaced and superseded with new Wyoming stock certificates.
>
> We are writing as legal counsel for the [Company] to ask your cooperation and assistance with the re-issuance of new stock certificates. The first step is to collect and "retire" all outstanding and issued Delaware certificates. If you currently hold the _original_ stock certificate(s), we ask that you execute the reverse side of each and return it/them to the undersigned in the enclosed postage-paid, pre-addressed envelope. […]
>
> ***Upon receipt of the certificate(s) […] for all shares of common stock held by you, we will issue to you a new Wyoming stock certificate*** […].

See **Exhibit B** (_emphasis_ in original) (*emphasis* added). By letter dated June 16, 2014, Mr. Rice followed up with Lawrence Kravetz and again requested that he return his original stock certificates. See **Exhibit C**.

28. After receiving Mr. Rice's letter dated February 27, 2014 requesting the return of his stock certificates reflecting 25,000 shares in the Delaware entity in exchange for a corresponding number of shares in the Wyoming entity, Steven Brooks returned his original stock certificates to the Company.

29. On or about September 16, 2014, in accordance with the instructions from Mr. Rice, Plaintiffs, Lawrence Kravetz, Jonathan Kravetz and Carrie Kravetz sent their original stock certificates in the Delaware entity so that stock certificates could be issued from the Wyoming entity. See Certified Mail Receipt, attached hereto as **Exhibit D**.

30. At the time he turned in his shares, Lawrence Kravetz held 1,200,000 shares of BTL stock, with a value of no less than $4.8 million, as follows:

| Certificate Number | Date Issued | Number of Shares |
|---|---|---|
| 6A | 07/15/2005 | 200,000 |
| 23 | 09/30/2005 | 100,000 |
| 112 | 01/11/2008 | 200,000 |
| 116 | 06/04/2008 | 600,000 |
| 130 | 06/11/2010 | 100,000 |

*See* **Exhibit E**. At the time they turned in their original stock certificates, Jonathan Kravetz and Carrie Kravetz each held 20,000 in BTL stock with a value of no less than $80,000 as to each of them.

*Defendants Refuse to Reissue Stock from the Wyoming Entity to Lawrence Kravetz*

31. Even though Lawrence Kravetz had turned in 1,200,000 shares to the Company, Defendants refused to issue Lawrence Kravetz any shares from the Wyoming entity. Lawrence Kravetz has made demands on Defendants that they re-issue him 1,200,000 shares of stock, but Defendants refused.

32. Defendants originally (and falsely) contended that Lawrence Kravetz's stock certificate number 116 for 600,000 shares was issued by "mistake" and was duplicative of his correct holdings of BTL common stock. *See* Letter dated March 30, 2015, from Shawn Rice to James P. McEvilly, III, attached hereto as **Exhibit F**. After further communications between Plaintiffs' counsel and Defendants, Defendants were unable to explain why 100,000 shares of BTL common stock were issued to Lawrence Kravetz on June 11, 2010, if the issuance of June 4, 2008 in fact was a "mistake," which of course it clearly was not.

33. Defendants subsequently changed their argument, claiming, on the basis of an unsigned, undated document prepared by and on behalf of Defendants, that Lawrence Kravetz

6

was not entitled to 600,000 of his original shares because he allegedly failed to provide any services to the Company. *See* **Exhibit G**.

34. Even though they only disputed (however baselessly) their obligation to issue 600,000 of Lawrence Kravetz' 1,200,000 shares, Defendants, for nearly six months after he had turned in his original stock certificates, refused to issue *any* BTL shares in the Wyoming entity to Lawrence Kravetz. Defendants thereby effectively held 600,000 undisputed shares hostage to their demand that Lawrence Kravetz agree to relinquish the remaining 600,000 shares.

35. Contrary to Defendants assertions, numerous e-mails, correspondence and other documents demonstrate that Lawrence Kravetz diligently and persistently attracted investors and raised capital for BTL.

36. In recognition of Lawrence Kravetz' services, the Company issued him considerable amounts of stock on several occasions.

37. Prior to Lawrence Kravetz' demand that the Company re-issue new stock certificates in the Wyoming entity in the same amount as the stock certificates in the Delaware entity that he had retired, Defendants never asserted that Lawrence Kravetz had not fully and satisfactorily performed services on behalf of BTL. In fact, Defendants never took this position with Lawrence Kravetz until they were confronted with the obvious falsity of their initial claim that 600,000 shares of stock had been issued to Lawrence Kravetz in error.

*Defendants Refuse to Reissue Stock from the Wyoming Entity to*
*Jonathan Kravetz, Carrie Kravetz and Steven Brooks*

38. Even though Jonathan Kravetz and Carrie Kravetz each returned their respective 20,000 shares in the Delaware entity to the Company, Defendants have refused to issue Jonathan Kravetz and Carrie Kravetz any shares in the Wyoming entity. Jonathan Kravetz and Carrie Kravetz made demands on the Company that it issue each of them 20,000 shares of BTL stock in

7

the Wyoming entity in order to replace their share of BTL stock in the Delaware entity, but Defendants have persistently refused to so.

39. Defendants have not provided any reason why they have refused to issue Jonathan and Carrie Kravetz their shares of BTL stock in the Wyoming entity. Defendants have only stated that they would not issue any shares to Jonathan Kravetz and Carrie Kravetz because they are the children of Lawrence Kravetz.

40. Likewise, Defendants have refused to issue Steven Brooks his 25,000 shares of common stock in the Wyoming entity, with a value of no less than $100,000, despite repeated demands that they do so.

## CLAIMS

### COUNT I
### (Breach of Contract)

41. Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

42. By letter dated February 14, 2014, Defendants agreed to issue new stock certificates in the Wyoming entity in exchange for Plaintiffs returning their stock certificates in the Delaware entity.

43. Plaintiffs satisfactorily performed their obligations under the Agreement by returning all of their stock certificates in the Delaware entity, which had considerable value, in exchange for a corresponding number of shares of common stock in the re-domesticated Wyoming entity.

44. BTL and the BTL Directors were under a duty to re-issue to Plaintiffs a corresponding number of BTL common stock in the Wyoming entity pursuant to the agreement reflected in the letter dated February 14, 2014.

8

45. BTL and the BTL Directors have refused to re-issue to Plaintiffs their full number of shares of BTL common stock in the Wyoming entity as per the agreement reflected in the letter dated February 14, 2014.

46. As a direct and proximate result of Defendants' breach, Plaintiffs have suffered damages in an amount to be established at trial, including, without limitation, the value of the BTL shares of common stock that are owed to them, as well as the attorneys' fees and other costs incurred in connection with this action.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and against Defendants in an amount to be determined after trial, further award to Plaintiffs relief including penalties, interest, attorney fees, costs and other further relief as this Court deems just and appropriate under the evidence and the circumstances.

## COUNT II
### (Promissory Estoppel)

47. Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

48. By letter dated February 27, 2014, the Defendants obligated themselves to issue new Wyoming stock certificates to Plaintiffs upon Plaintiffs "execut[ing] the reverse side of each and return[ing] it/them to [the Company] in the enclosed postage-paid, pre-addressed envelope. Upon receipt of the certificate(s) … for all shares of common stock held by you, we will issue to you a new Wyoming stock certificate … ." *See* Ex. B. The foregoing statements were made in circumstances calculated to induce reliance, and Defendants could have reasonably expected Plaintiffs to take action in reliance thereon.

49. Defendants' promise induced Plaintiffs' reliance. Plaintiffs "execute[d] the reverse side of each [stock certificate] and return[ed] it/them to [the Company] in the enclosed

9

postage-paid, pre-addressed envelope." *See* Ex. B. Plaintiffs reasonably expected BTL Directors to fulfill their promise to authorize and issue to Plaintiffs new stock certificates in an amount equal to the original retired stock certificates.

50. In surrendering their BTL stock certificates in the Delaware corporation, Plaintiffs acted to their detriment in that they relinquished shares of substantial value, expecting to be restored to the same position by the Wyoming entity's issuance of new stock certificates.

51. Injustice can be avoided only if the Defendants' promise is enforced.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and against Defendants in an amount to be determined after trial, further award to Plaintiffs relief including penalties, interest, attorney fees, costs and other further relief as this Court deems just and appropriate under the evidence and the circumstances.

## COUNT III
### (Unjust Enrichment)

52. Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

53. By letter dated February 27, 2014, the Defendants obligated themselves to issue new Wyoming stock certificates to Plaintiffs upon Plaintiffs "execut[ing] the reverse side of each and return[ing] it/them to [the Company] in the enclosed postage-paid, pre-addressed envelope. Upon receipt of the certificate(s) … for all shares of common stock held by you, we will issue to you a new Wyoming stock certificate … ." *See* Ex. B.

54. Plaintiffs "execute[d] the reverse side of each [stock certificate] and return[ed] it/them to [the Company]." *See* Ex. B. The Company stock was valuable.

55. Defendants solicited and accepted Plaintiffs' stock certificates in the Delaware corporation. Under the circumstances, Defendants reasonably could have expected that Plaintiffs

expected full value in return. In fact, Defendants fostered such expectancy by promising in the February 27, 2014, letter that it would issue replacement stock. *See* Ex. B.

56. Defendants have refused to re-issue Plaintiffs' stock in BTL or otherwise compensate Plaintiffs for the reasonable value of their stock. The Company should not in good conscience retain this value without compensating Plaintiffs.

57. As a direct and proximate result of Defendants' actions, equity and good conscience require that Defendants be required to issue to Plaintiffs their BTL stock certificates in full and any additional amount due and payable to Plaintiffs in an amount to be established at trial.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and against Defendants in an amount to be determined after trial, further award to Plaintiffs relief including penalties, interest, attorney fees, costs and other further relief as this Court deems just and appropriate under the evidence and the circumstances.

## COUNT IV
### (Breach of Fiduciary Duty)

58. Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

59. At all times relevant hereto, the BTL Directors were members of the Board of Directors at BTL. The BTL Directors are all BTL stockholders in the Wyoming entity.

60. At all times relevant hereto, Plaintiffs were BTL stockholders.

61. The BTL Directors owe a fiduciary duty to Plaintiffs to act in good faith, with loyalty and due care. A director must perform his duties as a director, including its duty as a member of the board, in good faith and with such care as an ordinarily prudent person in a like

position would use under similar circumstances. A director is chargeable with knowledge of those corporate affairs which it is his duty to know.

62. By inducing Plaintiffs' reliance to surrender their original stock certificates in return for new BTL stock in the Wyoming entity and subsequently refusing to issue stock in BTL to Plaintiffs, the BTL Directors acted in bad faith and without any good faith basis or legitimate business reason for doing so. No ordinarily prudent person would induce Plaintiffs to surrender their stock and then unjustifiably – and in violation of promises to the contrary – retain the value of their stock without compensating Plaintiffs.

63. By failing to authorize and cause the issuance of Plaintiffs' BTL stock certificates in full, the BTL Directors breached their fiduciary duty of good faith by committing an unlawful and wrongful act behind a shifting series of meritless excuses for refusing to perform their obligations as BTL Directors by issuing stock to Plaintiffs, as specifically alleged hereinabove.

64. At all times in dealing with BTL and its counsel/Director Mr. Shawn Rice, Mr. Rice indicated that he was acting in consultation with and at the direction of all of the BTL Directors in refusing to authorize and cause the full and prompt issuance of the BTL stock certificates of Plaintiffs.

65. In his communications and dealings with Plaintiffs, Mr. Rice was acting as a member of the BTL Board of Directors and represented that he was speaking directly on behalf of each BTL Director in making representations to Plaintiffs in connection with Defendants' false and shifting explanations refusing to issue Plaintiffs' BTL stock.

66. The BTL Directors have no good faith basis or legitimate business reason for refusing to issue BTL stock in the Wyoming entity to Plaintiffs, as promised.

67. The BTL Directors have refused to issue Plaintiffs' BTL stock in the Wyoming entity in order to enrich themselves and other BTL insiders. In refusing to issue the BTL stock

of Plaintiffs and other stockholders in full, the BTL Directors have done so for the purpose of reducing the number of shares of BTL stock issued and outstanding.

68.  The BTL Directors have engaged in this misconduct in order to increase the value of their BTL stock on a per share basis and enrich themselves and other BTL insiders at Plaintiffs' expense.  In doing so, the BTL Directors have breached their duty of loyalty to Plaintiffs by wrongfully refusing to perform their duties as BTL Directors purely out of financial self-interest and which wrongful conduct was not a valid act of the BTL Directors' business judgment.

69.  The BTL Directors have enriched themselves at Plaintiffs' expense in direct violation of their fiduciary duties of good faith and loyalty to Plaintiffs.

70.  As a direct and proximate result of the Directors' breach of their fiduciary duty, Plaintiffs have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and against Defendants in an amount to be determined after trial, further award to Plaintiffs relief including penalties, interest, attorney fees, costs and other further relief as this Court deems just and appropriate under the evidence and the circumstances.

## COUNT V
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

71.  Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

72.  By letter dated February 27, 2014, Defendants obligated themselves to issue new Wyoming stock certificates to Plaintiffs upon Plaintiffs "execut[ing] the reverse side of each and return[ing] it/them to [the Company] in the enclosed postage-paid, pre-addressed envelope." *See* Ex. B.  As the Company would have expected, Plaintiffs "execute[d] the reverse side of each

[stock certificate] and return[ed] it/them to [the Company]." *See* Ex. B. Plaintiffs, in turn, expected that "[u]pon receipt of the certificate(s) … for all shares of common stock held by [Plaintiffs], [the Company] will issue … a new Wyoming stock certificate" to them. Ex. B.

73. The implied covenant in every contract requires that neither party act in a manner that injures the rights of the other to receive the benefit of its bargain. Here, it was implied in the February 27, 2014 letter that, upon receipt of Plaintiffs' original certificates, the BTL Directors would take all reasonable actions to issue replacement stock to Plaintiffs. By failing to do so, the BTL Directors have frustrated Plaintiffs' reasonable expectations. By affirmatively contriving false excuses as to why the new stock should not issue, the BTL Directors are not acting in accordance with the common purpose as set forth in the letter, and are depriving Plaintiffs of the benefit of their bargain.

74. Plaintiffs reasonably expected that Defendants would cause Plaintiffs' BTL stock in the Wyoming entity to be issued promptly after returning their stock certificates in the Delaware entity to Defendants. Defendants have breached this implied term of the contract by failing and refusing to promptly issue Plaintiffs' BTL stock certificates.

75. Plaintiffs reasonably expected that Defendants would cause Plaintiffs' BTL stock to be re-issued in an equal number of shares of undiluted BTL stock in the Wyoming entity once Plaintiffs returned their stock certificates in the Delaware entity. Defendants breached this implied term of the contract by refusing to issue Plaintiffs an equal number of shares of undiluted BTL stock in the Wyoming entity once Plaintiffs returned their stock certificates in the Delaware entity.

76. Defendants were vested with broad discretion in performing under the contract with Plaintiffs in terms of promptly issuing BTL stock in the Wyoming entity in an equal number of undiluted shares. In this regard, Defendants have failed to reasonably exercise their discretion

with proper motive and have acted capriciously, arbitrarily, and for their own personal financial benefit.

77. Plaintiffs have incurred damages directly and proximately caused by Defendants' breach of the implied covenant of good faith and fair dealing.

78. As a direct and proximate cause of Defendants' breach, Plaintiffs have suffered substantial direct and consequential damages. Consequently, Plaintiffs respectfully request damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and against Defendants in an amount to be determined after trial, further award to Plaintiffs relief including penalties, interest, attorney fees, costs and other further relief as this Court deems just and appropriate under the evidence and the circumstances.

### COUNT VI
### (Conversion)

79. Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

80. At all times described herein, Plaintiffs owned shares of BTL's stock. Lawrence Kravetz owns 1,200,000 shares, but only has received 600,000 of his shares. Jonathan Kravetz and Carrie Kravetz each own 20,000 shares and have not received any of their shares. Steven Brooks owns 25,000 shares in the Company and has not received any of his shares.

81. Defendants continue to refuse to issue Plaintiffs' BTL stock, even though Plaintiffs have legal title to and the right to possess the stock. Defendants' exercise of dominion and control over Plaintiffs' BTL stock denies Plaintiffs their rights to use their stock.

82. Plaintiffs have a right to immediate possession of their BTL stock, absolutely and unconditionally.

83. Plaintiffs have made repeated demands upon Defendants for the return of their BTL stock, which demands Defendants have refused.

84. Plaintiffs' stock has a value of no less than $4.00 per share.

85. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages in an amount to be established at trial.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and against Defendants in an amount to be determined after trial, further award to Plaintiffs relief including penalties, interest, attorney fees, costs and other further relief as this Court deems just and appropriate under the evidence and the circumstances.

## COUNT VII
### (Declaratory Judgment Pursuant to 28 U.S.C. § 2201)

86. Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

87. The Wyoming Business Corporation Act provides that the power to authorize and issue shares in a corporation is vested in its board of directors. W.Y. Stat. §§ 17-16-621.

88. Plaintiffs' surrender of their BTL stock certificates in the Delaware corporation created a binding agreement between Plaintiffs and the Company's Directors for the Directors to authorize and direct the issuance of Plaintiffs' stock certificates in the Wyoming corporation in full.

89. A justiciable controversy exists as to whether the Directors must authorize and issue to Plaintiffs the full number of their shares of common stock in the Company.

90. Plaintiffs have an interest in the declaratory judgment because they are shareholders of the Company.

WHEREFORE, Plaintiffs seek entry of an Order declaring that the Directors must authorize and cause the Company to issue to Plaintiffs new stock in the BTL in an amount equal to the shares they retired and surrendered to the Company in the Delaware corporation without dilution of their percentage ownership interest in the Company prior to its domestication in Wyoming.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable.


DATED: September 23, 2016            Respectfully submitted,

                                      By Counsel for Plaintiffs,


                             By:     /s/Paul A. Ruscheinski


Paul A. Ruscheinski [#6279731]
Thomas M. Crawford [#6210832]
Litchfield Cavo LLP
303 W. Madison St., Suite 300
Chicago, IL 60606
(312) 781-6602 (Ruscheinski)
(312) 781-6679 (Crawford)
(312) 781-6630 fax
Email: Ruscheinski@litchfieldcavo.com
        Crawford@litchfieldcavo.com