# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAWRENCE KRAVETZ, JONATHAN KRAVETZ, CARRIE KRAVETZ, and STEVEN BROOKS, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 16 CV 9194<br>) |
| BRIDGE TO LIFE, LTD., a Wyoming corporation, STEVEN SCHWEIGHARDT, THOMAS KELLER, JEROME LISS, JOEL SEGAL, RICHARD BIRCH, MICHAEL HOLICK, and SHAWN RICE, in their capacities as Directors of BRIDGE TO LIFE, LTD., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## OPINION AND ORDER

Lawrence Kravetz, Jonathan Kravetz, Carrie Kravetz, and Steven Brooks filed suit against Bridge to Life, Ltd. (BTL) and its board of directors, including Steven Schweighardt, Thomas Keller, Jerome Liss, Joel Segal, Richard Birch, Michael Holick, and Shawn Rice, for breach of contract (count I), promissory estoppel (count II), unjust enrichment (count III), breach of fiduciary duty (count IV), breach of the implied covenant of good faith and fair dealing (count V), conversion (count VI), and declaratory judgment (count VII). Defendants have moved to dismiss all counts against the directors as well as counts V, VI, and VII against BTL under Federal Rule of Civil Procedure 12(b)(6).[1] (Dkt. 21.) On August 18, 2017, the court issued an Opinion and Order as to the claims brought by Lawrence Kravetz (Order). (Dkt. 37.) For the

---

[1] BTL, but not the directors, have answered counts I, II, and III. (*See* dkt. 20.)

reasons stated below, the motion is granted in part and denied in part as to Jonathan Kravetz, Carrie Kravetz, and Steven Brooks.

## ANALYSIS

The court described the factual background in its Order and will not repeat it here.

**I.** *Res Judicata*

**A. Jonathan Kravetz and Carrie Kravetz**

In its Order, the court held that all claims brought by Lawrence Kravetz against the directors and counts V and VI brought by Lawrence Kravetz against BTL were barred by *res judicata* based on the Delaware litigation. Because Jonathan and Carrie brought the same claims and were parties to the same Delaware litigation, the same reasoning applies. Accordingly, all of their claims against the directors as well as counts V and VI against BTL are dismissed with prejudice.

**B. Stephen Brooks**

Although Brooks was not a party to the Delaware suit, defendants argue that his claims are also barred by *res judicata* because he was in privity with the Kravetzes. This argument fails. "The concept of privity pertains to the relationship between a party to a suit and a person who was not a party but whose interest in the action was such that he [or she] will be bound by the final judgment as if he [or she] were a party." *Bradley* v. *Div. of Child Support Enf't ex rel. Patterson*, 582 A.2d 478, 480 (Del. 1990) (citation omitted and brackets in original). "Parties are in privity for *res judicata* when their interests are identical or closely aligned such that they were actively and adequately represented in the first suit." *Aveta Inc.* v. *Cavallieri*, 23 A.3d 157, 180 (Del. Ch. 2010). Defendants argue that because Brooks, like the Kravetzes, seeks shares of stock, their interests are aligned. But here, each plaintiff, including Brooks, has a different legal

interest: his or her own unique shares. Brooks seeks *his* 25,000 undiluted shares, which are separate and independent from those sought by the Kravetzes. Nor did Brooks have a pre-existing legal relationship with the Kravetzes. *See Kohls* v. *Kenetech Corp.*, 791 A.2d 763, 769 (Del. Ch. 2000), *aff'd*, 794 A.2d 1160 (Del. 2002) ("An individual stockholder is not, solely because of potentially aligned interests, presumed to act in the place of (and with the power to bind) the other stockholders."). Accordingly, none of Brooks's claims is barred by *res judicata*.

## II. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count V)

Defendants argue that count V should be dismissed because Illinois law does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing. Brooks, however, invokes the internal affairs doctrine and claims that Wyoming law—which does recognize an independent cause of action—applies.

The internal affairs doctrine, recognized by Illinois, is "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *CDX Liquidating Tr.* v. *Venrock Assocs.*, 640 F.3d 209, 212 (7th Cir. 2011) (quoting *Edgar* v. *MITE Corp.*, 457 U.S. 624, 645, 102 S. Ct. 2629, 73 L. Ed. 269 (1982)); *see also* 805 Ill. Comp. Stat. Ann. 5/13.05 (prohibiting Illinois from regulating foreign corporations' internal affairs). Defendants respond that, because common law claims for contract damages "do not look inward to determine how a corporation should govern itself," the internal affairs doctrine does not apply. (Dkt. 32 at 10.)

The internal affairs doctrine "is recognized throughout the states, and by the Supreme Court as well." *Resolution Tr. Corp.* v. *Chapman*, 29 F.3d 1120, 1122 (7th Cir. 1994), *overruled*

3

*on other grounds by Atherton* v. *FDIC*, 519 U.S. 213, 117 S. Ct. 666, L. Ed. 656 (1997).[2] "With respect to stock issues, the local law of the state of incorporation has nearly always been applied."[3] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 302 rptr. n.1 (1971). Here, the breach of contract claim relates to the issuance of stock, clearly a matter "peculiar to the relationship[] . . . between the corporation . . . and shareholders." *CDX Liquidating*, 640 F.3d at 212 (quotation omitted); *see also Kimmel* v. *Wirtz*, 793 F. Supp. 818, 820 (N.D. Ill. 1992) (noting that the Illinois Supreme Court has considered suits to compel the issuance of stock to affect a corporation's internal affairs); *Patriot Sci. Corp.* v. *Korodi*, 504 F. Supp. 2d 952, 957 (S.D. Cal. 2007) (applying internal affairs doctrine to breach of contract claim regarding stock dispute). Accordingly, Brooks's claim for breach of the implied covenant of good faith and fair dealing is governed by Wyoming law, BTL's state of incorporation.

The Wyoming Supreme Court has recognized that "parties to a commercial contract may bring a claim for breach of the implied covenant of good faith and fair dealing based on a contract theory." *Scherer Const., LLC* v. *Hedquist Const., Inc.*, 2001 WY 23, ¶ 24, 18 P.3d 645, 655 (Wyo. 2001) (adopting § 205 of the RESTATEMENT (SECOND) OF CONTRACTS). In short, "[t]he implied covenant of good faith and fair dealing requires that neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement," such as to interfere or fail to cooperate in the other party's performance. *Id.* at ¶ 19, 18 P.3d at 653. In *Scherer Const.*, a landowner imposed an overnight deadline on a contractor to complete a "punch list." The contractor could not have performed on such short notice, and the landowner

---

[2] *See F.D.I.C.* v. *Wabick*, 335 F.3d 620, 625 n.2 (7th Cir. 2003) (noting that *Chapman's* ruling on choice-of-law "presumably remains controlling precedent").

[3] At least one Illinois appellate court has cited favorably to this section of the restatement. *See Newell Co.* v. *Petersen*, 325 Ill. App. 3d 661, 687, 758 N.E.2d 903, 922 (2001).

4

engaged another contractor to finish the work (as the contract allowed). Although the court only remanded for further proceedings, the case implies that an unreasonable deadline could be a breach of the landowner's promise of good faith and fair dealing. The illustrations set out in the RESTATEMENT (SECOND) OF CONTRACTS similarly suggest that one party must have done something dishonest or evasive that defeated the other's ability to perform or undermined the other party's benefit of the bargain. *See* RESTATEMENT (SECOND) OF CONTRACTS, *supra*, cmt. d.

Brooks alleges that the defendants' bad faith and self-interested dealing defeated his reasonable expectations that Wyoming shares would be issued promptly, in an equal number, and undiluted. On the face of it, Brooks has pleaded a straightforward breach of contract, which means he has no need to prove breach of the covenant of good faith in order to prove his claimed breach of contract. Nonetheless, the court in *Scherer Const.* stated that whether there has been a breach of the duty "is a factual inquiry that focuses on the contract and what the parties agreed to." *Id.* at 654. Thus, the motion will be denied to allow the facts to be more fully developed.

## III.  Conversion (Count VI)

Defendants claim that count VI is barred by the *Moorman* doctrine[4] because the losses Brooks seeks to recover are based on defendants' alleged breach of contract.[5] The *Moorman* doctrine prevents recovery for most tort claims when the damages are purely economic. *See Moorman Mfg. Co.* v. *Nat'l Tank Co.*, 435 N.E.2d 443, 453, 91 Ill. 2d 69, 61 Ill. Dec. 746 (Ill. 1982); *Fireman's Fund Ins. Co.* v. *SEC Donohue*, *Inc*., 679 N.E.2d 1197, 1199, 176 Ill. 2d 160,

---

[4] This is also referred to as the "economic loss doctrine."

[5] Both parties argue this count under Illinois law, which the court applies.

223 Ill. Dec. 424 (Ill. 1997). Brooks seems to argue that his claim falls within an exception to the *Moorman* doctrine, which permits recovery in tort where a duty arises outside the contract.[6]

Among other exceptions, the Illinois Supreme Court has recognized that, "[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion, Holy Cross Province* v. *Touche Ross & Co.*, 636 N.E.2d 503, 514, 159 Ill. 2d 137, 164, 201 Ill. Dec. 71 (Ill. 1994).[7] "[The] exceptions have in common the existence of an extra-contractual duty between the parties, giving rise to a cause of action in tort separate from one based on the contract itself." *Catalan* v. *GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011).

"To recover in tort under the economic loss doctrine, a party must show harm above and beyond a party's contractual or commercial expectations." *Am. United Logistics, Inc.* v. *Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003), *as amended on denial of reh'g* (Apr. 3, 2003) (citing *In re Chicago Flood Litigation,* 680 N.E.2d 265, 276, 176 Ill. 2d 179, 223 Ill. Dec. 532 (1997)). Indeed, the Illinois Supreme Court has emphasized that "[s]imply characterizing a breach of contract as 'wilful and wanton' does not change the fact that plaintiffs are only seeking recovery for harm to a contract-like interest." *Morrow* v. *L.A. Goldschmidt Assoc., Inc.*, 492 N.E.2d 181, 185, 112 Ill. 2d 87, 96 Ill. Dec. 939 (Ill. 1986); *accord Mijatovich* v. *Columbia Sav. & Loan Ass'n*, 522 N.E.2d 728, 730, 168 Ill. App. 3d 313, 119 Ill. Dec. 66 (Ill. App. Ct. 1988). Thus, to determine whether the *Moorman* doctrine bars a claim in tort, "the key question is whether the defendant's duty arose by operation of contract or existed independent[ly] of the contract." *Wigod* v. *Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012).

---

[6] This argument would only apply to the directors, as a corporation cannot owe a fiduciary duty.

[7] Three of the four generally recognized exceptions, *see In re Ill. Bell Switching Station Litig.*, 641 N.E.2d 440, 443–444, 161 Ill. 2d 233, 204 Ill. Dec. 216 (Ill. 1994), do not apply here.

A conversion claim may not proceed where the duty to the plaintiff arises from the contract. *See, e.g.*, *Essex Ins. Co.* v. *Lutz*, No. 06-CV-0114-DRH, 2007 WL 844914, at *6 (S.D. Ill. Mar. 20, 2007) (holding conversion claim barred where plaintiff failed to allege that defendant "owed it a duty completely independent of the one arising under the contract"); *Braman* v. *Woodfield Gardens Assoc., Realcorp Investors I*, 715 F. Supp. 226, 229 (N.D. Ill. 1989) (barring conversion claim where "plaintiffs' alleged injuries amount to nothing more than economic loss"). By comparison, in *Vanco US, LLC* v. *Brink's, Inc.*, No. 09 C 6416, 2010 WL 5365373, at *6 (N.D. Ill. Dec. 14, 2010), the conversion claim was allowed to proceed because the contract did not contemplate the situation in which the conversion arose. (A party who agreed to build a managed data network pocketed money given to him by the other party intending that he pay a third party vendor. The court found that this was not the type of 'economic loss' contemplated by the doctrine.)

Brooks argues that his conversion claim springs from defendants' fiduciary duty to shareholders, duties that are separate from the contract—a duty to the shareholders to act in good faith, with loyalty and due care. Brooks cites no case, however, that would support his theory. Nor is it any different from a breach of the covenant of good faith and fair dealing in the contract. Brooks seeks damages for defendants' failure to reissue shares, not recovery of the shares (as in an action for detinue at common law).[8] (*See* dkt. 1 at 16 (alleging damages and

---

[8] Brooks cites *McAllister* v. *Kuhn*, 96 U.S. 87, 6 Otto 87, 24 L. Ed. 615 (1877) and *Giles* v. *Sentinel Technologies, Inc.*, 689 N.E. 2d 355, 294 Ill. App. 3d 97, 228 Ill. Dec. 483 (Ill. App. Ct. 1997), to support his argument that shares of stock can be the subject of a conversion claim and thus are not "purely economic damages." But Brooks does not seek anything more than an economic remedy. Nor does he make any allegation of injury to person or property. *See Moorman*, 435 N.E.2d at 449 ("'Economic loss' has been defined as damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits-without any claim of personal injury or damage to other property as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.") (internal quotation marks and citations

seeking a judgment "in an amount to be determined after trial").) And the proffered facts demonstrate that the damages he has suffered are the same as damages for his breach of contract claim. The *Moorman* doctrine therefore precludes Brooks's claim, and count VI is dismissed with prejudice.

**IV.     Declaratory Judgment (Count VII)**

For the reasons discussed in the Order, defendants' motion to dismiss count VII as to BTL is denied. Additionally, defendants' motion to dismiss Brooks's count VII as to the directors is denied.

**ORDER**

Accordingly, the motion to dismiss counts brought by Jonathan and Carrie Kravetz (dkt. 21) is granted in part and denied in part. All counts against the individual directors are dismissed with prejudice. Counts V and VI against BTL are also dismissed with prejudice. The motion is denied as to count VII against BTL.

The motion to dismiss counts brought by Stephen Brooks (dkt. 21) is granted in part and denied in part. The motion is granted as to count VI. It is denied as to all other counts.

Plaintiffs are to submit an amended complaint reflecting the court's rulings on the motion to dismiss by September 27, 2017. Defendants will answer by October 18, 2017. This date supersedes the court's minute order of August 28, 2017 (dkt. 40).

Date: September 14, 2017

_____
U.S. District Judge Joan H. Lefkow

---

omitted). Brooks does not explain how the failure to reissue his Delaware stock as Wyoming stock has damaged the shares. Rather, he claims a breach of a promise to reissue shares.